Aaron **WINTER** and Ruth E. **Winter,**
Plaintiffs,

v.

D. J. & M. **INVESTMENT AND CON-STRUCTION CORP.,** Philip Cravitz, Donald L. Cravitz, Michael D. Cravitz, Jeanne Cravitz, Bennett J. Cravitz, Richard Davis, Leo E. Bromberg, Andrew P. Tell, Mary Tell, Murray J. Ross, Murray J. Ross, doing business under the firm name and style of M. J. Ross & Co., M. J. Ross & Co., Inc., Atlas Securities, Inc., and Herman B. Rothbard, Defendants.

No. 161–59.

United States District Court
S. D. California,
Central Division.
July 29, 1960.

Shacknove & Goldman, Los Angeles, Cal., for plaintiffs.

Bennett J. Cravitz, Los Angeles, Cal., in pro. per., for defendant D. J. & M. Inv. & Const. Corp.

Slavitt & Edelman, Beverly Hills, Cal., and Robert R. Weaver, Phoenix, Ariz., for defendants Rothbard and Andrew and Mary Tell.

Leo E. Bromberg, Beverly Hills, Cal., in pro. per., for defendants Murray J. Ross, Murray J. Ross d/b/a M. J. Ross & Co., M. J. Ross & Co., Inc. and Atlas Securities, Inc.

BYRNE, District Judge.

This is a suit under the civil liabilities provisions of the Securities Act of 1933.[1] The plaintiff has tendered securities sold to him, allegedly in violation of the Act, and seeks to recover the consideration paid therefor.

Defendants Andrew and Mary Tell, who are in the business of developing industrial properties in Arizona, arranged with the United States Electronic Development Corporation, hereafter Usedco, through its president, defendant Rothbard, to sell to Usedco certain lands and buildings thereon, located in Arizona, for a stated amount of cash. It was subsequently agreed that, in lieu of cash, Usedco would issue 93,333 shares of its stock to the Tells, soon thereafter to be redeemed by cash. Permission was obtained from the California Corporation Commission for the issuance of the stock to the Tells, and the deal was consummated as agreed. No registration statement under the Securities Act was made with regard to the issuance or sale of this stock.

The defendants Bromberg and Cravitz were attorneys for Usedco, and Cravitz' family held all the shares of defendant, D. J. & M. Investment Company. On the advice of Cravitz, D. J. & M. purchased 61,000 of the 93,333 shares issued to the Tells and subsequently resold it to various brokers including Murray J. Ross doing business as M. J. Ross & Co. Ross sold the block of 5000 shares herein involved, as principal, to the plaintiffs Aaron and Ruth Winter. Plaintiffs allege that the sale was effected by the making of material misrepresentations of fact to the plaintiffs, and the omission of pertinent facts as to the financial condition of Usedco.

Title 15 U.S.C.A. § 77l[2] offers a plaintiff two theories under which he may impose civil liability on a defendant. Subsection (1) imposes liability on any person who offers or sells a security in violation of section 77e which is the section of the Act which prohibits the use of interstate commerce or of the mails to aid in the offer or sale of securities where there

---

1. Title 15 U.S.C.A. § 77l et seq.

2. § 77l. Civil liabilities arising in connection with prospectuses and communications

"Any person who—

"(1) offers or sells a securty in violation of section 77e of this title, or

"(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of section 77c of this title), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary

in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

"shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

is no registration statement in effect. The second of the theories provided the plaintiffs under § 77l allows recovery for a sale effected by means of an untrue statement of material fact or a material omission of fact.

Another feature of § 77l is that it provides that a defendant "shall be liable to the person purchasing such security from him". The wording of this section indicates that there must be privity between plaintiff and defendant, that a plaintiff may recover only against his immediate seller. See Loss, Securities Regulations, p. 991. In order to prevail against any but his direct seller, a plaintiff must invoke § 77o [3] of the Act, the "control provision".

Thus the liability of all but the defendant Ross is derivative. The more remote defendants from the transaction cannot be civilly responsible unless it is established (1) that Ross is liable, and (2) that a control relationship existed between them and Ross.

We turn now to a discussion of the liability of the defendant Ross under subsection (1) of § 77l as a person who "offers or sells a security in violation of section 77e * * *". There being ample evidence of the interstate nature of the transaction and of the use of the mails and no registration statement in effect at the time of the sale by Ross to the plaintiffs, plaintiffs have made out a prima facie case under 77e and subsection (1) of § 77l, against the defendant Ross, *unless* the transactions are held to be exempt under § 77d.[4]

Ross claims the "dealer exemption" is applicable. That is for "transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public * * * *". Plainly Ross is a dealer as defined in § 77b(12) [5] and the statutory forty days after first issue having elapsed, it would seem that the exemption is applicable.

■ The dealer exemption is not applicable, however, where the defendant may also be held as an underwriter. The language of § 77d(1), which exempts dealer transactions "including an underwriter no longer acting as an underwriter in respect of the security involved", would appear by negative *not* to exempt a dealer who is *still acting* as an underwriter in respect of the security involved.

■ Thus the liability of Ross under subsection (1) of § 77l turns on the question: was Ross an underwriter in respect of the securities involved. Ross, to be an underwriter as defined in § 77b (11), must have purchased from an issuer, or participated in a sale by the is-

3. § 77o. "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

4. § 77d. "The provisions of section 77e of this title shall not apply to any of the following transactions:

"(1) Transactions by any person other than an issuer, underwriter, or dealer; transactions by an issuer not involving any public offering; or transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter * * *".

5. § 77b(12). "The term 'dealer' means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person."

suer with a view towards distribution, or have purchased or participated in the purchase from a person in a control relationship with the issuer. Ross' vendor was D. J. & M. The issuer was Usedco. There is no evidence that Ross participated in the original sale by the issuer. Thus Ross may not be held under subsection (1) of the civil liabilities provision unless D. J. & M. was in a control relationship with the issuer. In that event Ross' vendor may be treated as an issuer, and that would make Ross an underwriter.

Ross had no connection with the issuer, and the only evidence which might possibly indicate a control relationship existing between Usedco and D. J. & M. is that Cravitz, the defendant, was an attorney for both corporations. At the time the stock was issued to the Tells, it does not appear that D. J. & M. was aware of Usedco (D. J. & M. is a family corporation, owned primarily by the defendant Cravitz' father), and subsequent to the sale to D. J. & M., the relationship to Usedco was hostile.

These sections have been liberally construed, e. g., S. E. C. v. Chinese Consolidated Benevolent Ass'n, 2 Cir., 120 F.2d 738. Even construing this section liberally, however, there is no evidence to support a finding that D. J. & M. controlled Usedco or the Tells, and to hold defendant Ross as an underwriter. It is clear that Ross may not be held liable under subsection (1) of § 77*l*. We advert now, therefore, to subsection (2) of that section.

■■ Ross, in negotiating the sale to the plaintiffs, used a copy of North's Newsletter, dated September 18, 1957, which is a prospectus describing Usedco and includes a statement that "Operations have been modestly profitable since company commenced business in April 1955." The fact is that the company had never operated profitably. The North report is a very optimistic one on the status of the company; it contains material misleading statements, and material omissions of fact likely to mislead a potential investor and did mislead the plaintiffs who were ignorant of the truth. The defendant Ross has not sustained the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruths and omissions. It follows that Ross is liable under subsection (2) of § 77*l*.

■ The evidence is quite clear that the sale to plaintiffs was made by Ross as principal and not as agent for D. J. & M. Therefore § 77*l* may not be applied as against the other defendants in this suit in the absence of a control relationship. "The term 'control' (including the terms 'controlling', 'controlled by' and 'under common control with') means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. 230.405.

Each step in these transactions regressing from the sale to the plaintiff makes the possibility of a finding of control more remote. The control must be a control by the defendant involved of the defendant found liable, i. e., Ross. As to Rothbard and the Tells, it does not appear that they were at all acquainted with Ross. As to Bromberg and Cravitz, they were the attorneys for Ross (Bromberg is attorney of record for Ross in the instant suit), but there is no evidence that they controlled Ross. D. J. & M. was but one of the sources from which Ross obtained the Usedco stock he was selling to the public. There is no evidence upon which to base a finding that D. J. & M. controlled Ross.

There are suspicious circumstances from which one gains the impression that there have been shady goings-on, but the defendants cannot be held liable on suspicion. Congress might have made the civil liability section much more sweeping, but it did not do so. Congress instead allowed a liberal exemption for dealers, and the scheme of recovery clearly requires that the defendant upon whom liability is sought to be imposed must have taken part in the sale to the plaintiff, either directly or indirectly, or

through control of the vendor. Applying these criteria to the instant case, only the plaintiffs' vendor is liable.

Counsel for the plaintiff is directed to prepare, serve and lodge formal findings of fact, conclusions of law and judgment pursuant to Rule 7 of the rules of this court, West's Ann.Code.