**SECURITIES AND EXCHANGE COMMISSION**

v.

**COMPUTRONIC INDUSTRIES CORP. et al.**

**Civ. A. No. 3–2690.**

United States District Court
N. D. Texas,
Dallas Division.

Dec. 11, 1968.

D. J. Silman, Securities and Exchange Commission, Joan H. Saxer, Ft. Worth, Tex., for plaintiff.

William M. McKnight, Braecklein, Mitchell, Thorpe & Lewis, James L. Mitchell, Dallas, Tex., for defendants.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

The Securities and Exchange Commission brought this action for permanent injunction against Computronic Industries Corporation (formerly Western Reserve Corp.), Allied Florist Credit Association, Inc., Kevin B. Halter, William C. Hipp, Manney & Company, and Irving Manney on five counts. The action is directed toward acts and practices of the defendants with regard to the offering and sale of Computronic's stock, in violation of Section 10(b) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78j(b) and Sections 5(a), 5(c) and Section 17(a) of the Securities Act of 1933, as amended (15 U.S.C. §§ 77e(a), 77e(c) and 77q (a)). Defendants, Computronic Industries Corporation, Allied Florist Credit Association, Inc., and Kevin B. Halter, without admitting the allegations, stipulated and consented to the entry of a permanent injunction against them. Jurisdiction is based on Section 21(e) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78u(e)) and Section 20(b) of the Securities Act of 1933, as amended (15 U.S.C. § 77t(b)).

William C. Hipp, a certified public accountant, allegedly violated Section 17 (a) of the Securities Act of 1933, as amended (15 U.S.C. § 77q(a)) and Section 10(b) of the Securities Act of 1934, as amended (15 U.S.C. § 78j(b)). The undisputed facts show that sometime in May or June, 1968, Hipp, at the request of Kevin B. Halter, prepared unaudited work sheets of the financial condition for the various defendant corporations. These work sheets in many ways were incorrect, and the Computronic's work sheets were subsequently used by Halter to represent the financial condition of that company.

The facts also show, however, that after learning from the Securities Exchange Commission the purpose for which these work sheets had been used, Hipp, in conjunction with the S.E.C.,

prepared and signed an affidavit rectifying any errors or misrepresentations which may previously have been made. Additionally, this defendant has never before nor since this incident been involved with any corporate clients.

■ There is no question about the court's ability to grant injunctive relief subsequent to the discontinuance of violative behavior and to grant an injunction without a showing of prior illegal acts. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944) and United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). However, the defendant's alleged single violative act does not require the court to infer a propensity for illegal behavior, and the plaintiff must therefore demonstrate the necessity for relief. United States v. W. T. Grant Co., supra, at 633–634, 73 S.Ct. 894.

■ Hipp's willingness to comply with securities regulations is clearly indicated. There is at best a remote chance of future violation and little expectation that the policy embodied by the Act will be thwarted by the failure to grant an injunction.[1] Inasmuch as the granting of an injunction is highly discretionary and in view of the injunctive purpose to regulate and not punish, denial of the requested injunction is appropriate. United States v. W. T. Grant Co., supra; Swift & Co. v. United States,

276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1928); S.E.C. v. Culpepper, supra; S.E.C. v. Torr, 87 F.2d 446 (2 Cir. 1937). Hence there is no necessity to determine Hipp's culpability as alleged.

■ Defendants Irving Manney and Manney & Co. allegedly violated Section 5(a) and (c) of the Securities Act of 1933, as amended.[2] Manney, individually and as President of Manney & Company, purchased approximately 35,000 shares of Computronic's stock from Herbert L. Wiggs, Chairman of the Board of Computronic Industries Corporation, between March 12, 1968 and April 3, 1968, and an additional 46,000 shares pursuant to an intrastate offering of a new Computronic's issue. These shares from both Wiggs and Computronic Industries Corporation were sold on the same days as the purchases or soon thereafter. Manney claims the transactions are exempt under Section 4(3) of the 1933 Act, which states:

Sec. 4. The provisions of section 5 shall not apply to—

(3) transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction) * * *.

This exemption, however, is only beneficial to Manney and thereby to Manney & Company, if he were not a statutory

[1]. "The critical question for the court * * * is whether there is a reasonable expectation that the defendants will thwart the policy of the Act by engaging in activities proscribed thereby." S.E.C. v. Culpepper, 270 F.2d 241, 249 (2 Cir. 1959).

[2]. Sec. 5. Prohibitions Relating to Interstate Commerce and the Mails

(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

underwriter. In the Matter of Brooklyn Manhattan Transit Corporation, 1 S.E.C. 147, 161 (1936); Securities & Exchange Commission v. Chinese Consolidated Benevolent Association, Inc., 120 F.2d 738 (2 Cir. 1941) and Winter v. D. J. & M. Investment and Construction Corp., 185 F.Supp. 943 (S.D.Calif. 1960).

A statutory underwriter is defined in Section 2(11) of the Securities Act of 1933 in the following terms:

Sec. 2. When used in this title, unless the context otherwise requires—

(11) The term 'underwriter' means any person who has purchased from an issuer with a view to, * * * the distribution of any security * * *. As used in this paragraph the term 'issuer' shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

Under the aegis of Section 19(a) of the Securities Act of 1933 (15 U.S.C. § 77s), the Commission defined "control" and all its derivations to include at the very least any officer or director of the issuer.[3] 17 C.F.R. 230.405; Winter v. D. J. & M. Investment and Construction Corp., supra, at p. 947.

In view of the preceding definitions it is apparent that Manney purchased all subject stock from the "issuer". The only question remaining is whether Manney took the subject stock with a view to distribution. Although neither "view to distribution" nor "distribution" has been defined by the Act, the Commission itself defined the latter to mean "the process by which in the course of a public offering a block of securities is dispersed and ultimately comes to rest in

the hands of the investing public." In the Matter of Oklahoma-Texas Trust, 2 S.E.C. 764, 769 (1937), aff'd sub nom. Oklahoma-Texas Trust v. S.E.C., 100 F. 2d 888, 1 S.E.C. Jud.Dec. 620 (10 Cir. 1939), 1 Loss, Security Regulation 254 fn 221 (2d ed. 1961).

■ The test for determining "public offering" is whether the offerees are able to fend for themselves without the statutory protection of the required prospectus. If they cannot protect themselves, the offering is public. S.E.C. v. Ralston Purina Company, 346 U.S. 119, 125, 73 S.Ct. 981, 97 L.Ed. 1494 (1952).

In the case at bar there is no evidence as to the identity of the ultimate recipients of the Computronic's stock after it left Manney's possession. Sales by defendant were to brokerage houses, but there is no indication as to whether they were acting as principals or agents. Without more the court must presume the brokerage houses were functioning in their capacity as brokers vice dealers for individual, non-insider investors in order to give the Act the effect to which it is entitled.

■ Manney's "intent" to distribute the stock can be presumed from the small time lapse between his purchases and sales of Computronic's stock.[4] The burden of proving otherwise, here as was also true with the public offering issue, is on the defendant. S.E.C. v. Ralston Purina Company, supra, at p. 126, 73 S. Ct. 981; Gilligan, Will & Co. v. S.E.C., 267 F.2d 461 (2 Cir. 1959). There is no evidence to the contrary.

■ Within the framework of the above discussion Manney, individually and as President of Manney & Company, did function as a statutory underwriter. The defendant, having so acted with reference to stock unregistered at the time of purchase by him, violated Sec-

---

3. 17 C.F.R. 230.405 defines "control" in the following terms:

(f) *Control.* The term 'control' (including the terms 'controlling', 'controlled by' and 'under common control with') means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

4. 1 Loss, Securities Regulation 552 (2d ed. 1961)

tions 5(a) and 5(c) of Securities Act of 1933 as alleged as to himself and his company. The Securities Exchange Commission is therefore entitled to the injunction for which it prayed.

Although the activities of both defendants relate to the questionable activities of Computronic Industries Corporation, et al., one distinction is apparent— Manney is deeply involved in security activities as a securities dealer whereas Hipp has experienced a single passing flirtation which is unlikely to reoccur.

The opportunity for future violations by Manney is great whereas the like opportunity by Hipp is remote. It is therefore not only consistent but also appropriate that the requested injunction against William C. Hipp be denied and the one against Irving Manney and Manney & Company be granted.