Juanita McCLURE, Plaintiff-Appellant,

v.

The FIRST NATIONAL BANK OF LUBBOCK, TEXAS, et al., Defendants-Appellees,

Gaines County Developments, Defendant-Appellant.

No. 73-1376.

United States Court of Appeals, Fifth Circuit.

July 22, 1974.

Rehearing and Rehearing En Banc Denied Oct. 7, 1974.

Harold D. Hammett, Fort Worth, Tex., for McClure & Gaines.

James H. Milam, Lubbock, Tex., for First Nat'l.

Michael R. Waller, Houston, Tex., for Emens.

Thos. Jefferson Griffith, Lubbock, Tex., for Hanslik.

Before BELL, COLEMAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

There are two issues in this 10b–5 securities fraud case: *first*, whether the promissory note given together with a trust deed for a bank loan is a security controlled by the federal securities acts, and *second*, whether the pledge of corporate stock for renewal of the bank loan constituted a sale within the meaning of the securities law. On a motion to dismiss, the District Court held that under the allegations of fact in the complaint, neither the execution and delivery of the promissory note nor any of the associated transactions, which included the pledge of stock, constituted a sale of a security within the meaning of the Securities Exchange Act of 1934. The Court, therefore, dismissed the complaint for lack of subject matter jurisdiction. 352 F.Supp. 454 (N.D.Tex. 1973). We affirm.

The facts are fully set forth in the District Court opinion. Briefly, plaintiff Juanita Hanslik McClure was taken advantage of by her ex-husband, Adolph Hanslik, who has been discharged in bankruptcy so that any financial relief available to her must come from the First National Bank of Lubbock, Texas, and its vice-president and loan officer, Sterling Emens, Jr. The fraud theory against these two defendants is based on a $200,000 loan made by the Bank to a corporation, Gaines County Developments (GCD), which was half owned by Mrs. McClure. The stock had been divided between her and her husband in a domestic property settlement. Suing individually and derivatively on behalf of GCD, Mrs. McClure alleges that Hanslik

and Emens on representations of corporate need, obtained her consent to the loan from the Bank to GCD on a one-year promissory note and a deed of trust on corporation land, but then used the $200,000 to repay unsecured personal debts of Hanslik to the Bank, rather than to pay corporate obligations. Hanslik gave his worthless personal note to the corporation for funds that he had thus diverted to his personal obligations. The Bank subsequently extended the one-year note but required Mrs. McClure to pledge her corporate stock as additional collateral. With the note unpaid, the Bank eventually foreclosed on the corporation's land, its only substantial asset, so that even though not foreclosed, the pledged stock in the corporation became essentially worthless.

■ Since this case comes to us for review of a dismissal of a complaint on jurisdictional grounds, we do not reach factual issues and need not concern ourselves with whether actionable fraud is alleged in the complaint either under federal securities law or under state law. Fraud is assumed for the purpose of this review. If the District Court had jurisdiction of the subject matter of the complaint, the case would have to be remanded for full development of the facts and issues surrounding these transactions. Subject matter jurisdiction must be found, if at all, under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (1973). The decision as to whether the Court had subject matter jurisdiction turns on whether under the facts of this case there was a purchase or sale of a security within the meaning of the Act.

### I.

■■ The first question is whether the note given to the Bank for the loan is a security within the meaning of the Act. Although the Securities Exchange Act of 1934 provides that the term security means "any" note, judicial decisions have restricted the application of the Act to those notes that are investment in nature and have excluded notes which are only reflective of individual commercial transactions. The path laid down by these decisions is not entirely clear because of the difficulty in expressing in judicial opinions the characteristics of those note transactions to which the term "any note" does not apply. The authorities are reasonably consistent, however, in holding that the Act does not cover all notes. A review of the decisions convinces us that the notes executed and delivered to the Bank are the kind that are not covered. Indeed, the way to this decision has been clearly indicated by a recently published opinion by Judge Walter P. Gewin, writing for another panel of this Court, which says that the reasoning of the District Judge in this case is compelling. Bellah v. First National Bank, 495 F.2d 1109 (5th Cir. 1974). We, of course, are bound only by the holding of other panels, not by the language of the opinions, but we believe that it would take en banc consideration for our Court now to hold that these notes are covered by the Act in the face or that decision.

In Bellah, the Court had under consideration a 10b–5 fraud complaint brought by two individuals against a bank which had renewed prior credit to them upon execution of a new promissory note and a deed of trust. Since the notes were of a six-month duration, the Court was considering whether the exemption in the Act of "any note . . . which has a maturity at the time of issuance of not exceeding nine months" should be applied. 15 U.S.C.A. § 78c(a)(10). Finding that judicial decisions had modified the exemption of "any" such note to exclude only so-called commercial notes, and not investment notes, the Court was compelled to determine whether the promissory note and deed of trust executed in favor of a bank for funds loaned for use in the borrowers livestock business were issued in the context of a commercial loan transaction and "beyond the purview of the Act." 495 F.2d 1114.

■ Although not all of the securities cases dealing with notes can be brought into line, analysis of the factual situations upon which the various cases were decided supports our holding that in this case the note falls outside of the purview of the Act.[1] The cases excluding certain notes from the coverage of the Act generally involved underlying transactions between payor and payee which were not of an investment nature. *See* Bellah v. First National Bank, 495 F.2d 1109 (5th Cir. 1974) (renewal note for bank loan intended to aid borrowers in operation of livestock business); Lino v. City Investing Co., 487 F.2d 689 (3d Cir. 1973) (note given for franchise rights); Janssen v. Tri-Pac Development Corp., Civil No. 72–1200 (E.D.Pa., Dec. 1, 1972) (note executed to purchase personal residence); Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307 (E.D.Mo.1971) (promissory notes issued in return for lifetime health club memberships); City National Bank v. Vanderboom, 290 F.Supp. 592 (W.D.Ark. 1968), aff'd, 442 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970)(corporate organizers gave notes for bank loans to purchase corporation's capital stock); SEC v. Fifth Avenue Coach Lines, Inc., 289 F.Supp. 3 (S.D.N.Y.1968), aff'd, 435 F. 2d 510 (2d Cir. 1970) (corporate note used to satisfy one insider's personal obligations to others); Beury v. Beury, 127 F.Supp. 786 (S.D.W.Va.1954), appeal dismissed, 222 F.2d 464 (4th Cir. 1955) (loan made by defendant as president of one company to self as president of another; no indication whether evidenced by note).

On the other hand, where notes have been deemed securities within the meaning of the securities laws, either of two factors, not present here, usually indicated the investment overtones of the underlying transactions.[2] First, in this case, only the Bank and GCD were involved in the execution of documents related to a commercial loan. GCD's notes were neither offered to some class of investors, nor were they acquired by the Bank for speculation or investment. *See* Sanders v. John Nuveen & Co., 463 F.2d 1075 (7th Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972) (securities broker sold short-term open market commercial paper to customers); Farrell v. United States, 321 F.2d 409 (9th Cir. 1963), cert. denied, 375 U.S. 992, 84 S.Ct. 631, 11 L. Ed.2d 478 (1964) (trust deeds and trust notes sold to general public in so-called "Secured 10% Earnings Program"); Llanos v. United States, 206 F.2d 852 (9th Cir. 1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954) (promissory notes given in exchange for funds solicited for scheme to wager on "fixed" volleyball game); Hall v. Security Planning Service, Inc., 371 F.Supp. 7 (D.Ariz.1974) (development corporation sold mortgages and mortgage notes executed by land purchasers to thousands nationwide); SEC v. Crofters, Inc., 351 F.Supp. 236 (S.D.Ohio 1972), rev'd on other grounds sub nom. SEC v. Coffey, 493 F.2d 1304 (6th Cir. 1974) (private corporation's 2-year notes purchased with State's investment funds); SEC v. Thunderbird Valley, Inc., 356 F. Supp. 184 (D.S.D.1973) (corporate notes sold to general public); United States v.

---

1. A number of the note cases were decided under the Securities Act of 1933, 15 U.S.C. A. § 77a et seq., rather than under Mrs. McClure's asserted jurisdictional predicate, the Securities Exchange Act of 1934. For present purposes the distinction is of little moment. In spite of occasional differences in wording, the definitions of "security" in the two Acts are functionally equivalent. *See* Tcherepnin v. Knight, 389 U.S. 332, 335–336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). *See also* 2 L. Loss, Securities Regulation 795–796 (2d ed. 1961); 5 *id.*, 2729 (Supp.1969).

2. The two factors identified here are not necessarily the only ones appropriate for consideration. *See generally* Comment, Commercial Notes and Definition of 'Security' Under Securities Exchange Act of 1934: A Note is a Note is a Note?, 52 Neb.L.Rev. 478, 510–524 (1973). Each case must turn on "the complete context of each transaction." Lino v. City Invg. Co., 487 F.2d 689, 696 n. 15 (3d Cir. 1973).

Hill, 298 F.Supp. 1221 (D.Conn.1969) (corporate notes sold to general public); Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (D.Minn.1968) (notes given to general public for funds to be used in a commodities trading investment pool); SEC v. Gulf Intercontinental Finance Corp., 223 F.Supp. 987 (S. D.Fla.1963) (that notes advertised and sold to general public were securities not questioned by parties); SEC v. Addison, 194 F.Supp. 709 (N.D.Tex.1961) (notes and other securities sold to general public allegedly to finance mining operations); SEC v. Los Angeles Trust Deed & Mortgage Exchange, 186 F. Supp. 830 (S.D.Cal.), modified as to remedy, 285 F.2d 162 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961) (trust deed notes sold to investors in "10% Earnings Program"); Schamber v. Aaberg, 186 F. Supp. 52 (D.Colo.1960) (stock and promissory notes payable out of production sold to investors in two states); SEC v. Vanco, Inc., 166 F.Supp. 422 (D.N.J. 1958), aff'd, 283 F.2d 304 (3d Cir. 1960) (corporate notes and stock interests offered to shareholders of related publicly held corporation); cf. Lehigh Valley Trust Co. v. Central National Bank, 409 F.2d 989 (5th Cir. 1969) (loan participation agreement sold by one bank to another was "certificate of participation" in note).

Second, in the case at bar, the Bank ostensibly extended its loan so that GCD might pay off its business debt. Thus, GCD did not obtain investment assets, directly or indirectly, in exchange for its notes. See Rekant v. Desser, 425 F.2d 872 (5th Cir. 1970) (real estate corporation issued note and stock to obtain land for subdivision); Alberto-Culver Co. v. Scherk, 484 F.2d 611 (7th Cir. 1973), rev'd on other grounds, —— U.S. ——, 94 S.Ct. 2449, 40 L.Ed.2d —— (1974) (corporate note issued in purchase of foreign business entities); Movielab, Inc. v. Berkey Photo, Inc., 452 F.2d 662 (2d Cir. 1971) (corporation issued promissory notes in exchange for assets of film processing and optical businesses); Ingenito v. Bermec Corp., 376 F.Supp. 1154 (S.D.N.Y.1974) (new notes containing different terms substituted for original notes given for tax sheltered cattle and cattle management contracts); Davis v. Avco Corp., 371 F. Supp. 782 (N.D.Ohio 1974) (notes given for loan to be used to buy into a pyramid distribution scheme with which finance company was associated); Olympic Capital Corp. v. Newman, 276 F.Supp. 646 (C.D.Cal.1967) (that note evidencing debt to small business investment company was security not questioned by parties); cf. MacAndrews & Forbes Co. v. American Barmag Corp., 339 F.Supp. 1401 (D.S.C.1972) (bills of exchange issued for industrial machinery a form of notes subject to the Act.) [3]

■ We realize that our holding today that the Act does not apply to commercial notes of a longer duration than nine months, taken with the decisions voiding the short-term exemption as to investment paper, virtually writes that exemption out of the law. On one hand, the Act covers all *investment* notes, no matter how short their maturity, because they are not encompassed by the "any note" language of the exemption.

---

3. Four cases do not fit easily into the foregoing classification of cases. See Zeller v. Bogue Elec. Mfg. Corp., 476 F.2d 795 (2d Cir.), cert. denied, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973) (corporation's note issued to evidence open account indebtedness to partly owned subsidiary); Young v. Seaboard Corp., 360 F.Supp. 490 (D.Utah 1973) (defendants caused bank to collapse by inducing it to make uncollectible loans for which notes were given); Prentice v. Hsu, 280 F.Supp. 384 (S.D.N.Y.1968) (defendant's notes exchanged for advances for expenses of retrieving assets to be invested in plaintiff's corporation); Whitlow & Assocs. v. Intermountain Brokers, Inc., 252 F.Supp. 943 (D.Hawaii 1966) (deposit with unsuccessful application for loan commitment "in connection with" sale of security). In Zeller, the Second Circuit accepted the distinction between commercial and investment notes but held that the controlled subsidiary stood in the position of an at least involuntary investor in the parent as the result of the advances the parent had caused it to make. 476 F.2d at 800.

On the other hand, the Act does not cover any *commercial* notes, no matter how long their maturity, because they fall outside the "any note" definition of a security. Thus, the investment or commercial nature of a note entirely controls the applicability of the Act, depriving of all utility the exemption based on maturity-length. The original scrivener of the definitional section may well wonder what happened to his carefully drawn exemption on the way to the courthouse, but if the judicial decisions do not properly reflect the intent of Congress as to the coverage of the Act, only that body can properly rectify the situation at this point, if stare decisis is to apply and the Supreme Court does not make some definitive decision contrary to the presently decided cases.

## II.

 Mrs. McClure's second argument is that her pledge of her stock in consideration for the Bank's renewal of the GCD loan was a "sale of any security" protected by the anti-fraud provisions of section 10(b) of the Securities Exchange Act and SEC Rule 10b–5. We do not doubt that a pledge of securities can constitute a "sale" in some cases, but we hold that the pledge was not a sale in the circumstances of this case.

The securities acts have as their fundamental purpose the protection of investors. To this end they are designed to "substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus achieve a high standard of business ethics in the securities industry." Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S. Ct. 1456, 1471, 31 L.Ed.2d 741 (1972), quoting SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). A commercial bank in accepting a pledge of stock as additional consideration for the extension of an overdue commercial loan does not necessarily affect the securities industry. A commercial bank's business is lending money not trading in securities. *Cf.* Bronner v. Goldman, 361 F.2d 759 (1st Cir.), cert. denied, 385 U.S. 933, 87 S.Ct. 295, 17 L.Ed.2d 214 (1966) (factor selling pledged stock not a "broker" or "dealer"). If the bank sells stock pledged as loan collateral, it might than be subjected to liability in connection with the sale if it does not meet the requirements of the anti-fraud provisions of the securities acts, but mere acceptance of a stock pledge as collateral in a privately negotiated transaction between borrower and lender does not, of itself, bring within the scope of the federal securities acts a transaction otherwise outside their purview. *See* 1 L. Loss, Securities Regulation 649 (2d ed. 1961).

The cases relied upon by Mrs. McClure, SEC v. Guild Films Co., 279 F.2d 485 (2d Cir.), cert. denied, 364 U.S. 819, 81 S.Ct. 52, 5 L.Ed.2d 49 (1960); SEC v. Pig'n Whistle Corp., 359 F.Supp. 219 (N.D.Ill.1973); SEC v. National Bankers Life Insurance Co., 334 F.Supp. 444 (N.D.Tex.1971), aff'd, 477 F.2d 920 (5th Cir. 1973); and American Bank & Trust Co. v. Joste, 323 F.Supp. 843 (W. D.La.1970), do not mandate a contrary conclusion. Except for *joste,* these cases involved the question of whether a pledge of unregistered stock is a sale for purposes of section 5 of the Securities Act of 1933, 15 U.S.C.A. § 77e. In the framework of that section, the pledge of unregistered stock as loan collateral is a "sale" because it causes the bank to become an "underwriter" when it forecloses and sells the unregistered securities. SEC v. National Bankers Life Insurance Co., 324 F.Supp. 189, 194 (N.D.Tex.), aff'd mem., 448 F.2d 652 (5th Cir. 1971). *See also* 1 L. Loss, Securities Regulation 645–651 (2d ed. 1961). In this context, it is significant that, unlike the case at bar, each of the section 5 cases involved sale of the pledged stock by the pledgee after the pledgor defaulted. *Joste,* too, although an action brought under an anti-fraud provision of the 1933 Act, 15 U.S.C.A. § 77*l,* is distinguishable on the ground that the bank therein sold the pledged stock upon default. On the other hand, in this case

the Bank did not foreclose on Mrs. McClure's pledged stock and did not sell it. Title to it remains in Mrs. McClure. Under these circumstances, her pledge did not constitute a "sale" of her stock within the meaning of section 10(b) of the 1934 Act and of Rule 10b–5. *Cf.* Herpich v. Wallace, 430 F.2d 792, 812 (5th Cir. 1970) (guarantor of pledgor not "purchaser" of pledged stock where *inter alia* no allegation of foreclosure).

Affirmed.