**Samuel MALLIS and Franklyn Kupferman, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION et al., Defendants.**

**No. 75 Civ. 909(MP).**

United States District Court,
S. D. New York.

Sept. 30, 1975.

Supplemental Order Oct. 2, 1975.

Hauser & Rosenbaum, New York City, for plaintiffs by Noel W. Hauser, New York City.

Hughes, Hubbard & Reed, New York City, for defendant (Federal Deposit Insurance Corporation as Receiver of Franklin National Bank) by Robert S. Anderson, New York City.

Sullivan & Cromwell, New York City, for defendant (European-American Bank & Trust Co.) by John L. Warden, New York City.

Charles Leeds, New York City, for defendant (Bankers Trust Co.) by Nathan Silverman, New York City.

## MEMORANDUM

POLLACK, District Judge.

Federal Deposit Insurance Corporation (FDIC hereafter) and European American Bank (EA) are successors in interest to an insolvent, Franklin National Bank (FNB).

Plaintiffs, two dentists, borrowed $156,000 from FNB on March 3, 1972, and now claim that the loan (reduced substantially by repayments on account) violated Regulation U (Federal Reserve Regulations, 12 C.F.R. Section 221.1 et seq.) prohibiting loans secured by margin stock in an amount in excess of the prescribed maximum loan value of the stock. Plaintiffs contend in their first claim for relief that the loan was made for the purposes of carrying or acquiring margin stock and is therefore void, and that it should be declared that they are not liable thereon.

■ Since the loan was neither directly nor indirectly made for the purpose of carrying or purchasing "margin stock" or being secured thereby nor were the arrangements with plaintiffs interposed as a subterfuge for avoidance of Regulation U by FNB, the first claim fails to state a claim on which federal relief may be granted.

Plaintiffs, Mallis and Kupferman, arranged the loan from FNB based solely on their signatures to a loan agreement. Their purpose was to take advantage of a business opportunity which they hoped would yield them a $50,000 profit. The opportunity involved the loan by them of money to one Fowler and his attorney Arnold on the obligation to repay the same on certain conditions with a $50,000 bonus or profit for the accommodation. Fowler had made a deposit toward the purchase of 40,000 shares of Equity National Industries, Inc., and needed more funds in order to complete the purchase. The shares were held by Bankers Trust Company, a defendant herein, as collateral for a loan to the shares' owners, Jerome and Judith Kates, who were the sellers in the transaction with Fowler.

The shares were unregistered, but Arnold is alleged to have represented to Mallis that they would become marketable in the near future because of a new rule promulgated by the Securities Exchange Commission. The shares if marketable would have, according to plaintiffs, been worth at least $400,000.

In actuality, the shares were subject to a restriction that ultimately made them

worthless. They had been issued to the Kates pursuant to the agreement by which a company called Take-Two, Inc. was merged into a subsidiary of Equity. The two certificates for the shares bore legends indicating that the shares had not been registered under the Securities Act and could not be transferred except in accordance with an escrow agreement to which they were subject. Under the escrow agreement, depending on whether specified earnings conditions for the prior business of Take-Two were met for specified years, the shares would be returned to Equity to be either cancelled or reissued without the restrictive legend referring to the escrow agreement.

By letter of March 1, 1971, Equity wrote to Bankers Trust, which held the shares as collateral on an August 1970 loan to the Kates, indicating that the earnings requirement had not been met for 1970 and requesting that the Equity shares issued to the Kates be delivered to Equity in accordance with the escrow agreement. Bankers Trust declined to do so. Equity brought suit in New York to obtain a cancellation of the shares but the suit did not proceed to a judicial determination. Equity ultimately brought suit in Delaware state court in May 1974 to obtain or to void the certificates of stock, naming the plaintiffs, the Kates, and FNB as defendants, but not Bankers Trust. This suit also did not go to judgment. Plaintiffs allege that the shares are now worthless, and indeed were worthless at the time of the Mallis-Arnold-Kates agreement culminating in their sale. At the closing of the sale, the funds transferred to Kates as consideration for the stock were turned over to Bankers Trust in payment of the outstanding indebtedness of the Kates to Bankers Trust. Bankers Trust then released the stock. Plaintiffs took the shares as collateral for their loan to Arnold and Fowler and now hold them after default by those borrowers.

Plaintiffs, as noted *supra*, seek to cancel their own indebtedness to FNB and its successors by alleging that the loan to them was in violation of Regulation U of the Board of Governors of the Federal Reserve System, 12 C.F.R. § 221.1 *et seq.*, as having been secured by stock for the purpose of purchasing or carrying "margin stock" in an amount in excess of the prescribed maximum loan value of the collateral.

Plaintiffs' allegations on this point fall short of adequacy in at least two ways, even assuming *arguendo* that they have sufficiently alleged that the loans were secured by stock. *Cf. Freeman v. Marine Midland Bank-New York*, 494 F.2d 1334 (2d Cir. 1974). The shares in question here were not "margin stock" within the meaning of Regulation U, and there was no loan for the purpose of purchasing stock within the meaning of that regulation.

■ The only definitional category of margin stock which arguably applies to the certificates of Equity common stock involved herein is that of stock "registered on a national securities exchange". It appears that listed shares of Equity common stock were in fact registered and traded on an exchange at the time of the transaction herein. However those shares here involved were neither registered nor listed on a national securities exchange.

EA and FDIC have introduced the listing application submitted to the American Stock Exchange by Equity for the listing of a number of categories of common stock including "175,000 additional shares of its common stock, *upon official notice of issuance*, which represent the maximum number of shares which the Company may be obligated to issue to the former shareholders of Take-Two, Inc. . . . if the earnings of the business formerly conducted by such company reach certain specified levels." (emphasis added) (Exhibit A to Howard affidavit, May 16, 1975).

In order for such shares to have been actually listed, Equity would have had to formally notify the Exchange that the conditions had been met, a "registration authorization" indicating the number of shares would have had to be prepared by the Exchange, and a listing fee would

have had to be paid by Equity. A review of the American Stock Exchange file indicated that none of these steps had ever been taken, and that the shares were never listed, which is hardly surprising given Equity's efforts to have the shares returned to it. (*See* Howard affidavit, *supra*, ¶¶ 3 and 4).

Contrary to plaintiffs' assertions, shares of stock are not "registered" on a securities exchange within the meaning of Regulation U when they are not themselves listed merely because other shares of their class are listed. *See* Published Interpretations of the Board of Governors of the Federal Reserve System, ¶ 6440 (1971) (Regulation U not applicable to loan to purchase newly issued stock during initial over the counter trading period prior to the stock "becoming registered (listed) on a national securities exchange"). The opinion letter of an attorney for the Board of Governors submitted to this Court by the plaintiffs is not dispositive here since the question the attorney was answering is not on point with the issue in contention. Since the Equity shares purchased from the Kates were not registered on a national securities exchange and fit into no other category set out in Regulation U, they were not "margin stock" within that regulation's meaning.

Regulation U bars a grant of credit directly or indirectly secured by any stock for the *purchase* or carrying of margin stock. EA and FDIC argue that the only situation in which Regulation U applies to loans made to a borrower who in turn relends the funds to a third person for the purchase of stock is if the initial borrower is engaged principally or as one of his important activities in the business of extending credit for the purpose of purchasing margin stock. *See* 12 C.F.R. § 221.3(q). They argue that if Regulation U applied to every loan of the type in this case, 12 C.F.R. § 221.3(q) would be superfluous.

█ It may well be that Regulation U would nevertheless be applicable if the initial borrower were simply interposed as a subterfuge for a bank's avoiding the regulation, but that is plainly not the situation here. Plaintiffs were clearly more than nominal intermediaries between FNB and Arnold in light of their own prospective profit. Thus, it cannot be fairly argued that the loan by FNB to the plaintiffs was made for the purpose of purchasing stock within the meaning of Regulation U, even though the funds were ultimately used by Arnold to purchase stock.

As a second claim for relief, plaintiffs allege a pendent claim against FNB based on allegations of common law fraud consisting of alleged misrepresentations of an officer of FNB to the effect that he had reviewed the transaction and that it was regular in all respects. Since there is no federal basis for this suit, there being no Regulation U claim, there is no basis for pendent jurisdiction and the second claim must therefore be dismissed. Leave to amend to assert this claim under Rule 10b–5 of the Rules and Regulations promulgated pursuant to Section 10(b) of the Securities and Exchange Act of 1934, as amended, will be denied as unavailing to plaintiffs who were not purchasers within the requirement of the *Birnbaum* doctrine, *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952), as adopted in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, 43 U.S.L.W. 4707 (1975).

█ The mere acceptance of a stock pledge as collateral in a privately negotiated transaction between borrower and lender does not of itself bring a transaction within the scope of the federal securities laws. *See, e. g., McClure v. First National Bank of Lubbock, Texas*, 497 F.2d 490 (5th Cir. 1974), *cert. denied* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402, 43 U.S.L.W. 3449 (1975); *Rosen v. Dick*, [1974-75] CCH Fed.Sec.L.Rep. ¶ 94,786 (S.D.N.Y. Sept. 3, 1974). Thus, even if the FNB loan to Mallis and Kupferman were secured by a pledge of the Equity stock, which is disputed by EA and FDIC, plaintiffs could still not state a claim entitling relief under Rule 10b–5 on that basis since no purchase or sale was involved.

■ Similarly, there was no purchase by plaintiffs in this case. Plaintiffs loaned the funds to Arnold and Fowler, who had already contracted to buy the stock in question. While the stock later came into plaintiffs' possession as collateral for their loan, the consideration for that loan was the obligation by Arnold and Fowler to repay with a bonus. Attempts to characterize the transaction as a purchase of the stock by plaintiffs are not convincing. To allow persons in plaintiffs' situation to sue under Rule 10b–5 would be to expand the class of prospective litigants under that rule to an extent uncalled for by the words of the rule or the statute. *Cf. Bolger v. Laventhol, Krekstein, Horwath & Horwath*, 381 F.Supp. 260, 267 (S.D.N.Y. 1974).

The third claim seeks relief only against Bankers Trust Company for orally asserting that the stock certificates were no longer subject to the restrictive legend thereon tying them to an escrow agreement while allegedly having knowledge that the certificates were void.

■ While this third claim is predicated on fraud under the Securities Act of 1933, as amended, no federal claim is asserted on which relief may be granted since plaintiffs were not "purchasers" of the securities. For the same reason, plaintiffs' offer to amend their complaint to assert a claim under § 10 of the Securities Exchange Act based on this allegation would be unavailing; permission to so amend is denied.

With respect to their offer to amend this third claim, plaintiffs claim that strict adherence to the *Birnbaum* purchaser-seller requirement for 10b–5 suits is no longer mandated in light of the holding in *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). This claim is unpersuasive in light of the fact that the plaintiff in *Bankers Life* (the liquidator of Manhattan Casualty Co.) was clearly within the scope of the *Birnbaum* rule. *See Haberman v. Murchison*, 468 F.2d 1305, 1311 n.5 (2d Cir. 1972).

In *Bankers Life* the Supreme Court recognized that creditors of a corporation in the process of being liquidated have an interest in a suit brought by the liquidator, but the Court carefully added that

. . . the fact that creditors of the defrauded corporate buyer or seller of securities may be the ultimate victims does not warrant disregard of the corporate entity . . .

The crux of the present case is that *Manhattan* [the corporate seller] suffered an injury as a result of deceptive practices touching *its* sale of securities as an investor. *Bankers Life, supra,* 404 U.S. at 12–13, 92 S.Ct. at 169 (emphasis added)

Opinions in the Second Circuit since *Bankers Life* have reaffirmed the vitality of the *Birnbaum* purchaser-seller doctrine except in a few narrow and irrelevant categories of cases. *Haberman, supra; International Controls Corp. v. Vesco*, 490 F.2d 1334, 1343, 1346 n.16 (2d Cir. 1974); *Petersen v. Federated Development Co.*, 387 F.Supp. 355, 358 (S.D.N.Y. 1974); *Gurvitz v. Bregman*, 379 F.Supp. 1283, 1286 (S.D.N.Y.1974); *Davidge v. White*, 377 F.Supp. 1084, 1087 (S.D.N.Y. 1974); *Goodall v. Columbia Ventures, Inc.*, 374 F.Supp. 1324, 1329 (S.D.N.Y. 1974).

■ Leave to join Arnold and Fowler as involuntary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure is also denied.

Rule 19(a) provides that

[a] *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any

of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

None of the requirements of this Rule are satisfied by plaintiffs' request. In the absence of Arnold and Fowler "complete relief" can be "accorded among those already parties." Dismissal of this action would in no way "impair or impede" the ability of Arnold and Fowler to "protect their interests," nor would it "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

 The general rule is that if the merits may be determined without prejudice to the absent party, the Court "will strain hard to reach that result." *Bourdieu v. Pacific Oil Co.*, 299 U.S. 65, 70, 57 S.Ct. 51, 53, 81 L.Ed. 42 (1936); *Charron v. Meaux*, 60 F.R.D. 619, 622 (S.D.N.Y.1973).

FDIC has joined in the motion to dismiss submitted by EA and FDIC and EA have submitted a joint brief setting forth their discussion on the viability of the complaint. The positions of those two defendants are identical on these issues. The motion is granted. The first claim is dismissed for failure to state a federal claim upon which relief can be granted. The second claim is a common law claim pendent for jurisdiction on the first claim and is consequently dismissed for lack of subject matter jurisdiction over it.

Bankers Trust submitted two affidavits to the Court urging dismissal of the third claim in the complaint which is asserted against it alone. The plaintiffs have presented their legal arguments on this point and have responded to the Bankers Trust affidavits. That motion is granted. The third claim for relief, the only one directed towards Bankers Trust, is dismissed for failure to state a claim upon which relief can be granted and for a lack of jurisdiction over the

subject matter of the controversy attempted to be raised therein.

It appears that FNB is an insolvent, whose interests in this case have passed to FDIC and/or EA, and it thus seems appropriate to terminate this litigation in this Court by dismissing the claims as to FNB as well.

Complaint dismissed in its entirety.

So ordered.

### SUPPLEMENTAL ORDER

 Since the filing of the decision in this case, defendant Federal Deposit Insurance Corporation has called the Court's attention to 12 U.S.C. § 1819 (1970), which authorizes suit against this defendant in the federal courts on a state law claim.

Accordingly, the dismissal of Count 2 against this defendant is set aside and liability or any other matter pertaining to that claim alone may be reargued.

So ordered.