**Samuel MALLIS and Franklyn Kupferman, Plaintiffs-Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION et al., Defendants-Appellees.**

No. 26, Docket 76–7166.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1976.

Decided Jan. 3, 1977.

Certiorari Granted May 23, 1977.

Certiorari Dismissed March 28, 1978.

Noel W. Hauser, New York City (Hauser & Rosenbaum, New York City, on the brief), for plaintiffs-appellants.

Jack H. Weiner, New York City (Charles Leeds, New York City, on the brief), for defendant-appellee Bankers Trust Company.

Philip K. Howard, New York City (John L. Warden, and Sullivan & Cromwell, New York City, on the brief), for defendant-appellee European-American Bank & Trust Company.

Robert S. Anderson, New York City (Hughes Hubbard & Reed, New York City, on the brief), for defendant-appellee Franklin National Bank.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal is from a judgment entered in the Southern District of New York, Milton Pollack, District Judge, 407 F.Supp. 7, dismissing the complaint for failure to state claims upon which relief can be granted and denying leave to amend the complaint in an action to recover damages and for other relief resulting from alleged violations of Regulation U of the Board of Governors of the Federal Reserve System, 12 C.F.R. § 221 (1976), and alleged violations of the antifraud provisions of the federal securities laws, including Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 (1976).

The essential questions which we find presented and our rulings thereon are as follows:

(1) Whether a bank loan to appellants by Franklin National Bank was subject to Regulation U.

We hold that it was not.

(2) Whether appellants as pledgees of stock certificates of Equity National Industries, Inc. have standing to sue under Section 10(b) and Rule 10b–5.

We hold that they do.

For the reasons below, we affirm the dismissal of the Regulation U claim against European-American Bank & Trust Company and Franklin National Bank; but as to the dismissal of the Securities Exchange Act claim against Bankers Trust Company, we reverse and remand with directions.

## I. FACTS

Appellants Mallis and Kupferman are dentists.[1] Between March 1 and March 3, 1972 Jack J. Arnold, an attorney, persuaded them to make a short term loan of $156,000 to himself and his client, John B. Fowler, to finance the purchase of 40,034 shares of stock in Equity National Industries, Inc. (Equity National). The consideration to appellants was to be $50,000. In addition, appellants were to receive possession of the Equity National stock certificates as collateral. To fulfill their part of the agreement, appellants immediately obtained a loan of $156,000 from appellee Franklin National Bank (Franklin National). The parties dispute whether this loan was to have been secured in turn by the Equity National certificates. This issue was not resolved by the district court.

Title to the Equity National shares desired by Arnold and Fowler was in Jerome and Judith Kates. But the certificates were in the possession of Bankers Trust Company (Bankers Trust), to which the Kateses had pledged the shares as collateral for a loan. The Kateses still owed $45,000 on this loan on March 3, 1972.

The shares, which the Kateses had acquired pursuant to a merger between a corporation under their control and Equity National, were subject to an escrow agreement which required the return of the certificates to Equity National for cancellation or reissue depending on whether the acquired corporation met specified earnings conditions. Each certificate bore a legend which declared it to be subject to the escrow agreement and restricted transfer except in accordance with the terms of the agreement. Although other Equity National shares of the same series were registered under the Securities Act of 1933 and listed on the American Stock Exchange (Amex), the shares issued to the Kateses were not.

By a letter to Bankers Trust, Equity National had recalled the Kateses' shares for cancellation in March 1971. As a result the shares were worthless when the transactions here at issue occurred in March 1972.

A closing was held on March 3, 1972. Arnold and Fowler, the Kateses, and representatives of Franklin National and Bankers Trust were in attendance, but not appellants. Franklin National's representative delivered three checks totalling $156,000 to the Kateses. The Kateses endorsed one of the checks in amount of $45,000 to Bankers Trust. Bankers Trust then released the Equity National certificates. The Kateses transferred the certificates to Arnold and Fowler who subsequently delivered them to appellants in accordance with the loan agreement.

The instant action arises from the failure of Arnold and Fowler to repay their loan from appellants. In the district court appellants sought to assert two claims. First, they sought relief against Franklin National, now insolvent, and the European-American Bank & Trust Company (European-American), which purchased appellants' note along with Franklin National's other assets.[2] They sought rescission of their loan from Franklin National on the ground that the loan was made for the purpose of acquiring margin stock in an amount in excess of the maximum loan value of the

---

1. We assume familiarity with the comprehensive statement of facts in the district court opinion. 407 F.Supp. at 9–10.

2. As the receiver of Franklin National, the Federal Deposit Insurance Corporation (FDIC) was named in the complaint as a defendant with respect to appellants' Regulation U claim. Appellants since have stipulated to dismissal of their action against FDIC. Although Franklin National remains as a party, appellants no longer seek a money judgment against it.

stock in violation of Regulation U.[3] Second, they alleged that Bankers Trust violated the Securities Act of 1933 in disposing of the unregistered Equity National shares in the course of terminating their pledge agreement with the Kateses. During the course of proceedings in the district court appellants departed from this theory, which apparently looked to Section 12(1) of the 1933 Act, 15 U.S.C. § 77*l*(1) (1970), and requested leave to amend their complaint to state a cause of action under Section 10(b) of the 1934 Act and Rule 10b–5 thereunder. The theory underlying their claim against Bankers Trust is that it knowingly misrepresented that the certificates no longer were subject to the escrow agreement.

European-American, Franklin National and Bankers Trust moved to dismiss the complaint for failure to state claims upon which relief can be granted. The court granted the motions and dismissed the complaint in its entirety. In granting the motions of European-American and Franklin National to dismiss the Regulation U claim, the court held that Franklin National's loan was not made for the purpose of carrying or purchasing margin stock within the meaning of Regulation U. In granting the motion of Bankers Trust to dismiss, the court held that appellees, as pledgees, were not "purchasers" of securities and therefore could not state a claim under the 1933 Act. For the same reason the court denied leave to appellants to amend their complaint to allege a claim under Section 10(b) of the 1934 Act and Rule 10b–5.

From the judgment dismissing the complaint and the order denying leave to amend, this appeal has been taken.[4]

## II.  REGULATION U CLAIM

█ The district court dismissed appellants' Regulation U claim for rescission against European-American and Franklin National on the ground that Regulation U does not apply to the loan in question. 407 F.Supp. at 10–11. We agree.

Regulation U prohibits banks from extending credit,

> "directly or indirectly  .  .  .  for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral  .  .  .  ."  12 C.F.R. § 221.1(a) (1976).[5]

The only definition of "margin stock" set forth in Regulation U which even approaches applicability to the instant shares is that of "a stock registered on a national securities exchange".  12 C.F.R. § 221.-

---

3. The complaint also alleged a pendant claim against Franklin National based on common law fraud. After dismissing appellants' federal claim against Franklin National, the district court dismissed the pendant claim for lack of subject matter jurisdiction and denied leave to amend the complaint to assert a cause of action against Franklin National under the Securities Exchange Act. Appellants since have stipulated to the dismissal of both of these claims.

4. Appellants' notice of appeal filed March 24, 1976 is "from the Order and Judgment of the HON. MILTON POLLACK".

Judge Pollack's opinion ordering dismissal of the complaint was filed September 30, 1975. On December 5, 1975, on motion of appellants' counsel, the judge filed a Rule 54(b) certificate directing the entry of a final judgment with respect to all defendants except FDIC so as to permit the instant appeal. We note that Judge Pollack's Rule 54(b) certificate complies with the approved practice in this Circuit that the required determination that there is no just reason for delay "ought not to be made as a matter of rote".  *Arlinghaus v. Ritenour,* 543

F.2d 461, 463 (2 Cir. 1976); *Gumer v. Shearson, Hammill & Co., Inc.,* 516 F.2d 283, 286 (2 Cir. 1974). Judge Pollack's finding that "[t]here is no just reason for leaving the claim against FDIC hanging in limbo and creating piecemeal appellate litigation" produced the additional therapeutic result of appellants' dismissal of their action against FDIC. See note 2, *supra.*

However, since "[e]very good case requires a mystery document", *Westchester Fire Insurance Company v. Tantalo,* 273 F.Supp. 7, 12 n. 5 (D.Conn.1967), it appears that the mystery document here is the judgment itself. Our search of the voluminous appendix and original district court record has failed to uncover any document that looks like a judgment. Since the parties and the district court have proceeded on the assumption that there was an adjudication of dismissal, we decline to stand on the technicality of the missing mystery document in this case.

5. "Maximum loan values" are set forth in 12 C.F.R. § 221.4 (1976).

$3(v)(1).^6$ Although other shares of the same series were listed on the Amex, the particular Equity National shares here in question were not listed on any national securities exchange. They therefore were not "margin stock" so as to trigger the application of Regulation U to the Bankers Trust loan.[7]

■ Moreover, appellants were neither "purchasing" nor "carrying" stock within the meaning of Regulation U. 12 C.F.R. § 221.1(a), *supra*. The Regulation specifically brings within its ambit credit extended to a bank customer engaged "principally, or as one of the customer's important activities, in the business of extending credit for the purpose of purchasing or carrying margin stocks. . . ." 12 C.F.R. § 221.3(g) (1976). Under the circumstances of this case, we construe this provision to state conditions which must be met before the Regulation will apply to an intermediate borrower who reloans the funds to enable another to purchase stock. Appellants, the intermediate borrowers here, had an independent interest in the transaction and bore an independent risk. We therefore need not decide whether we would construe § 221.3(g) otherwise if the intermediate loan were a sham entered into to circumvent the Regulation's application. Since borrowing for the purpose of relending to enable others to purchase or carry margin stock was not one of appellants' "important activities", we hold that Regulation U does not apply to the Franklin National loan.

■ Furthermore, European-American would be insulated from appellants' rescission claim even if Regulation U were applicable here. Section 29(c)(2) of the 1934 Act, 15 U.S.C. § 78cc(c)(2) (1970), bars construction of the Act or any regulation promulgated under it to afford a defense against "the collection of any debt . . . by any person who shall have acquired [it] in good faith for value and without actual knowledge of the violation" of the Act or regulation. Regulation U was promulgated pursuant to Section 7 of the 1934 Act, 15 U.S.C. § 78g (1970). European-American's payment of value for appellants' obligation, its good faith, and its lack of actual knowledge of any underlying irregularity are not disputed. Accordingly, even if Regulation U were otherwise applicable, we hold that Section 29(c)(2) would bar appellants from asserting their rescission claim against European-American.

### III. SECURITIES EXCHANGE ACT CLAIM

■ This brings us to what we regard as the chief question in the case: whether appellants have standing to sue under Section 10(b) of the 1934 Act and Rule 10b–5. Specifically, the issue is whether under the definition of "sale" in Section 3(a)(14) of the 1934 Act, 15 U.S.C. § 78c(a)(14) (1970), a pledge fulfills the familiar requirement that the fraud occur "in connection with the purchase or sale" of a security.

In resolving the standing question against appellants, the district court relied on *McClure v. First National Bank of Lubbock*, 497 F.2d 490 (5 Cir. 1974), *cert. denied*, 420 U.S. 930 (1975). There the court acknowledged that a pledgor might be liable for fraud under Section 10(b) after his default and a consequent sale of the securities by the pledgee, but held that the pledge itself did not constitute a "sale". At the time of the decision below in the instant case, the district court did not have the benefit of our subsequent decision which

**6.** 12 C.F.R. § 221.3(v) (1976) defines "margin stock" as:

". . . (1) a stock registered on a national securities exchange, (2) a OTC margin stock, (3) a debt security (i) convertible with or without consideration, presently or in the future, into a margin stock, or (ii) carrying any warrant or right to subscribe to or purchase, presently or in the future, a margin stock; (4) any such warrant or right, (5) any security issued by an investment company licensed under the Small Business Investment Company Act of 1958 . . . registered pursuant to section 8 of the Investment Company Act of 1940 . . . unless at least 95 percent of the assets of such company are continuously invested in exempted securities."

**7.** We agree with the district court's holding that the fact that other shares of the same series were listed on the Amex does not alter the result. 407 F.Supp. at 10–11.

rejected the rationale of *McClure* in a case arising under Section 17(a) of the 1933 Act. *United States v. Gentile*, 530 F.2d 461 (2 Cir.), *cert. denied*, 426 U.S. 936 (1976). We hold that *Gentile* and our earlier decision in *SEC v. Guild Films Co.*, 279 F.2d 485 (2 Cir.), *cert. denied*, 364 U.S. 819 (1960), control here and require that appellants be granted standing.

In *Guild Films* we held a pledge of stock to be a "sale" within the meaning of Section 2(3) of the 1933 Act, 15 U.S.C. § 77b(3) (1970),[8] in the context of determining that the pledgees there involved were "person[s] who [have] purchased from an issuer" within the meaning of the definition of "underwriter" in Section 2(11) of the 1933 Act, 15 U.S.C. § 77b(11) (1970). *SEC v. Guild Films Co., supra*, 279 F.2d at 489.[9] *Gentile* reaffirmed and expanded this holding. The defendant there was charged with a conspiracy to pledge fraudulently issued securities in violation of Section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a) (1970). We again held a pledge to constitute a "sale" within Section 2(3), this time to satisfy the requirements of Section 17(a) that the fraud occur "in the offer or sale of any securities". *United States v. Gentile, supra*, 530 F.2d at 466–67. We held:

"In effect, the pledgee assumes a very real investment risk that the pledged securities will have continuing value, a risk that is identical in nature to the risk taken by investors which serves as the indisputable basis for statutory regulation of securities transactions. We therefore find no reason to treat the equivalent risks differently under the statute." *Id.* at 467.[10]

The fact that *Gentile* was a criminal case in which civil standing was not an issue does not diminish its persuasion as a precedent with respect to the Section 10(b) claim before us. The existence of a "sale" is as essential to a criminal prosecution for violation of Section 17(a) as it is to a civil action under that section. We find no basis on the face of either the 1933 Act or the 1934 Act for denominating a pledge as a "sale" for criminal but not for civil purposes.

Nor would the standing policy enunciated by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), support such a conclusion. We recognize that the Court there expressed concern about vexatious suits by a potentially limitless class of plaintiffs. We further recognize that the granting of standing to pledgees creates potential plaintiffs where none might have existed. But a closer look at *Blue Chip* demonstrates that the specific concerns there expressed by the Court have no bearing on the question before us of granting standing to pledgees. The Court in *Blue Chip* had before it a plaintiff who claimed that the defendant's misrepresentations caused it to refrain from purchasing securities. The Court observed that the rule of *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2 Cir.), *cert. denied*, 343 U.S. 956 (1952), requiring a purchase or sale, had the virtue of excluding a class of plaintiffs who had not dealt in the security at all and whose cases as a result would stand or fall on oral testimony. Requiring that the plaintiff have "dealt in" the security would assure that each case stand upon at least one "objectively demonstrable fact." *Id.* at 746–47. A pledge which occurs pursuant to a loan contract is just as concrete a transaction as is a normal transfer of title.[11]

---

**8.** Section 2(3) defines a "sale" to include "every contract of sale or disposition of a security or interest in a security for value."

**9.** We reasoned that the term "purchaser", "although not defined in the Act, should be interpreted in a manner complementary to 'sale'." *SEC v. Guild Films Co., supra*, 279 F.2d at 489.

**10.** In rejecting the distinction drawn in *McClure* between the pledged shares while in the pledgee's possession and the same shares

after a sale due to the pledgor's default, we stated:
"We see no reason to make the character of the initial pledge dependent upon subsequent events." *United States v. Gentile, supra*, 530 F.2d at 467 n. 6.

**11.** Bankers Trust seeks to distinguish *Gentile* and *Guild Films* from the instant case on the further ground that neither of the pledges involved in those cases were bona fide. We fail to see what connection the pledgor's state of mind has with the question whether the

**830**

■ We believe that the rationale underlying our holding in *Gentile* with respect to Sections 2(3) and 17(a) of the 1933 Act is persuasive authority for holding that a pledge constitutes a "contract to sell or otherwise dispose of" a security within the meaning of Section 3(14) of the 1934 Act. Accordingly, on the facts of this case, we hold that both a "sale" and a "purchase" may be cognizable under Section 10(b) of the 1934 Act. Appellants were purchasers by virtue of their acceptance of the pledge by Arnold and Fowler; and Bankers Trust was a seller by virtue of its release of the Kateses' pledge.

We therefore reverse the dismissal of appellants' Securities Exchange Act claim and remand the case to the district court with directions to grant leave to appellants to amend their complaint in accordance with this opinion. See *Rogers v. White Metal Rolling & Stamping Corp.*, 249 F.2d 262 (2 Cir. 1957), *cert. denied*, 356 U.S. 936 (1958).[12]

Affirmed as to the dismissal of the Regulation U claim against European-American and Franklin National; but as to the dismissal of the Securities Exchange Act claim against Bankers Trust, reversed and remanded with directions to grant leave to appellants to amend their complaint in accordance with this opinion.[13]

pledgee has standing to sue. Such a distinction would be at odds with our rationale in *Gentile*.

12. Bankers Trust also contends that the dismissal of an earlier common law fraud action brought against it and others by appellants in the New York state courts should have a collateral estoppel effect so as to bar appellants' claim under Section 10(b). This defense is a matter for trial which we do not reach now. But see *Herendeen v. Champion International Corp.*, 525 F.2d 130 (2 Cir. 1975).

13. Having given due consideration to the motion by counsel for European-American for an award of attorneys' fees and double costs, we deny it.