**BRADFORD SECURITIES PROCESS-ING SERVICES, INC., Plaintiff,**

v.

**COUNTY FEDERAL SAVINGS AND LOAN ASSOCIATION as successor to First Federal Savings and Loan Association of Utica, New York, Defendant.**

**No. 76 Civ. 1709 (KTD).**

United States District Court, S. D. New York.

May 16, 1978.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for plaintiff by Eric H. Moss, New York City, of counsel.

Gainsburg, Gottlieb, Levitan & Cole, New York City, for defendant by Richard J. Rubin, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendant has moved to dismiss the complaint in this action alleging violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, as well as common law fraud and negligence, for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, F.R.Civ.P. 12(b), or, alternatively, for summary judgment in its favor, F.R. Civ.P. 56. Plaintiff has cross moved, pursuant to F.R.Civ.P. 37(b)(2) and (d), for sanctions against defendant for defendant's purportedly wilful failure to complete discovery pending the disposition of its motion to dismiss.

Plaintiff is a New York corporation engaged in performing clearing and custody services for municipal bond dealers, brokers and others. According to the complaint, plaintiff, acting on a customer's instruc-

tions, advances funds to the customer by accepting delivery of bonds purchased by the customer and paying the seller therefor. Plaintiff then holds the bonds as collateral for the advance until repayment thereof, either directly by the customer or indirectly by delivering the bond certificates to a purchaser from the customer in exchange for payment which is credited to the customer's account.

Defendant is a New York savings and loan association. The complaint essentially alleges that between January and August 1974, defendant's predecessor, First Federal Savings and Loan Association of Utica, New York ("First Federal"), sold municipal securities to two of plaintiff's customers, National Municipals, Inc. ("National") and Tower Brokerage, Inc. ("Tower"), both of whom had executed clearance and collateral agreements in plaintiff's favor as well as cross-guaranties, and whose accounts were treated as joint, single and unified. These sales purportedly cleared through and were delivered by First Federal to plaintiff who, as agent for these customers, paid First Federal pursuant to the agreements with those customers and the customers' instructions, and retained possession of the securities as collateral therefor. It is further alleged that in September 1974, National and Tower defaulted in repaying plaintiff, leaving plaintiff holding worthless securities as collateral. Asserting that First Federal knowingly or recklessly failed to disclose, upon delivery of the securities to plaintiff, that the bonds were worthless, unrated, nonnegotiable and transferred in accordance with a rigged trading scheme, plaintiff seeks to charge defendant with its purported $2,814,376.28 loss.

■ Defendant initially contests plaintiff's standing to prosecute its private securities action, contending that plaintiff is neither a purchaser nor seller of the securities in issue within the guidelines pronounced by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). I disagree.

The complaint characterizes plaintiff as a pledgee of the bonds delivered to it by First Federal and held by it as collateral for the sums it advanced therefor on its customer's account. Defendant has acquiesced in this characterization (Letter of Richard T. Rubin of November 17, 1977). In *Mallis v. Federal Deposit Insurance Corp.*, 568 F.2d 824 (2d Cir. 1977), *cert. dismissed sub nom. Bankers Trust Co. v. Mallis*, —— U.S. ——, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), the Second Circuit determined that the definition of "sale" in section 3(14) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(14), and incorporated into section 10(b) thereof, 15 U.S.C. § 78j, and its implementing rule 10b-5, encompassed a pledge of stock which secured a loan. The *Mallis* plaintiffs allegedly held this pledge pursuant to a loan agreement with their obligors, who had used the loan proceeds to purchase the stock constituting the pledge from its original owners. The original owners had previously pledged this stock as collateral for a loan from a trust company who, upon repayment of the balance thereof, had released the stock to those owners who, in turn, transferred the stock certificates to plaintiffs' obligors. When these obligors failed to repay plaintiffs, the *Mallis* action was commenced. In addition to the other claims alleged, plaintiffs sought leave to assert a section 10(b) claim against the trust company for knowingly misrepresenting, upon release of the stock to the owners, that the certificates were not subject to an escrow agreement that rendered the securities worthless. The trust company opposed the assertion of this claim, arguing that plaintiffs were not "purchasers" of the stock. The Second Circuit rejected this argument and ruled that the plaintiffs were purchasers consistent with the *Blue Chip Stamps* standards "by virtue of their acceptance of the pledge by [their obligors]." *Id.* at 830.

Here plaintiff is concededly a pledgee of the bonds in issue. Under *Mallis*, plaintiff, by virtue of its acceptance of the pledge, is a purchaser (albeit a "forced purchaser") entitled to prosecute this suit against defendant, the successor to the conceded seller

of the bonds to plaintiff's principals and pledgors. Defendant's motion to dismiss, insofar as it is premised on plaintiff's lack of standing, is thus denied.

█ Defendant next contests the legal sufficiency of plaintiff's securities fraud claim. In this connection, the complaint alleges that defendant is governed by regulations of the Federal Home Loan Bank Board and the Federal Savings and Loan Association which permitted, *inter alia*, the investment in municipal securities only if a bond rating of at least "Baa" or "medium high" and that are "general obligations" of the issuing municipality (¶¶ 7, 8); that in accepting the bonds in issue as collateral for the advances extended to National and Tower, plaintiff relied on defendant's representation that the securities were valuable, were of the required rating and were "otherwise a good, valid and negotiable security of a market value equal to the prices at which National, Tower, First Federal and others were willing to trade the same between and among themselves" (¶ 26); and that prior to the delivery of the securities in issue, defendant knew or recklessly failed to disclose that the securities were worthless, fraudulent and of no market value, that they were neither rated nor general obligation bonds, that the market for their sale had been artificially created by First Federal, National, Tower and others, and that they were not being traded in arms-length transactions but rather at false and fraudulent prices determined by one Bruce Bressman "on behalf of and as discretionary agent for both the purchaser and the seller in each such transaction." (¶ 28).

Defendant does not attack the facial sufficiency of these allegations; instead, relying on deposition testimony, defendant contends that the requisite elements of "reliance" and "scienter" are absent as a matter of law. It is defendant's position that no express representations were made; that even if representations were implicit in the fact that First Federal was bound by the regulations alleged, the nature of plaintiff's business precluded any claim of reliance thereon; and that any alleged plan was conceived and executed by Bressman of National and one Hugh Bell of Tower, with, at best, the negligent but unwitting participation by defendant's treasurer.

Plaintiff has offered the affidavit of its vice-president, as well as deposition testimony of Bressman and defendant's treasurer to bolster plaintiff's contentions that it accepted the bonds in issue for clearance not only because of its customers' credit ratings but also as a result of the representation implied in the fact that defendant was bound by certain regulations and in defendant's demands for payment; and that defendant's treasurer must be charged with knowledge of the alleged scheme resulting in plaintiff's loss. At this juncture, it cannot be summarily determined that plaintiff cannot succeed on its securities claim as a matter of law. The proof submitted by the parties clearly raises disputed issues of material fact which must await resolution at trial. Defendant's motion, insofar as it seeks summary judgment dismissing plaintiff's section 10(b) claim, is therefore denied.

With respect to plaintiff's cross-motion for sanctions and costs for defendant's failure to answer interrogatories propounded by plaintiff and to participate in the completion of deposing First Federal's treasurer, that motion is denied except that defendant is directed to file answers to plaintiff's interrogatories within twenty days from the filing of this opinion and produce the deponent for the completion of his deposition within thirty days thereafter.

SO ORDERED.