**Robert T. DESALLE, Sr.**

v.

**A.G. EDWARDS & SONS, INC., et al.**

**Civ. No. 3:91cv00689 (PCD).**

United States District Court,
D. Connecticut.

Oct. 21, 1992.

David M. Wallman, Stamford, Conn., for plaintiff.

William S. Rogers, Susan A. Quinn, Tyler, Cooper & Alcorn, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Plaintiff alleges a violation of Section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 promulgated thereunder, and related state law claims. Defendants A.G. Edwards & Sons, Inc. ("Edwards"), Kieran Kilbride, and Timothy Smith move to dismiss.

### I. *Background*

The following facts, alleged in the amended complaint, are accepted as true for purposes of considering the motion. Plaintiff agreed to sell his business to Gustaf Appelberg for $100,000 cash and a purchase money promissory note of $350,000. Plaintiff agreed to accept, as security, a pledge of a million shares of E–Lite Technologies, Inc. The agreement provided that "the value of the pledged securities would be at least equal to the sum of $350,000 on the date of their pledge." Amended Complaint at ¶ 12d. At the closing of the sale on May 21, 1990, plaintiff asked Appelberg how the value of the E–Lite stock would be documented. Appelberg referred plaintiff to Smith, a broker-dealer with Edwards. Plaintiff called Smith at Edwards. Smith told plaintiff that the pledge would support the promissory note; that the E–Lite stock was worth $350,000 or more; that, in the event of a default by Appelberg, the stock could be sold for an amount substantially equivalent to the principal amount of the note; and that E–Lite was "a good stock." Amended Complaint at ¶ 23. Smith and Kilbride then faxed to plaintiff's lawyer a letter as follows:

Dear Dave:

A current quote on E–Lite Technology is as follows:

| Bid | Ask | Average |
|-----|-----|---------|
| $0.25 | $0.625 | $0.4375 |

Call me if you have any questions.

Sincerely,

Kieran M. Kilbride
Investment Broker

Complaint, Exhibit 1.

Appelberg defaulted on the note. When plaintiff attempted to liquidate the shares, there was no market for them. He has not recouped his loss.

Plaintiff alleges that he relied to his detriment on the representations of defendants, which were fraudulent because (1) they implied the stock was more valuable than it actually was; (2) they failed to disclose information that would enable plaintiff to fully understand what they told him; and (3) they implied that the value of the shares was $437,500, *i.e.*, one million shares multiplied by the average of the "bid" and "ask" prices, $0.4375.

## II.  *Discussion*

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) must be decided solely on the facts alleged. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985). Such motion should be granted only where no set of facts consistent with the allegations could be proven which entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether plaintiff will prevail, but whether he should be afforded the opportunity to prove his claims. *Id.*

### A.  *Fraud*

Defendants argue that the amended complaint, even if true, does not allege actionable fraud by defendants. In particular, defendants claim that (1) Smith made oral statements of opinion and (2) Smith and Kilbride's fax contained only accurate information.

#### (i) *Smith's Oral Statements*

■ Defendants claim that Smith's oral statements were inactionable statements of opinion about the value of the E–Lite stock. Statements of opinion, however, are not *per se* inactionable. "Statements of predictions or opinions … are only actionable if the speaker 'disseminated the forecasts knowing that they were false or that the method of preparation was so egregious as

to render their dissemination reckless.' *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 137 (S.D.N.Y.1989)." *Ciresi v. Citicorp*, 782 F.Supp. 819 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992). *See also Eisenberg v. Gagnon*, 766 F.2d 770, 775 (3d Cir.), *cert. denied sub. nom*, *Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985), and cases cited therein. In such a case, the burden is on plaintiff to allege and prove an intent to deceive, *see Ciresi*, 782 F.Supp. at 822; *Capri Optics Profit Sharing v. Digital Equipment Corp.*, 950 F.2d 5, 10 (1st Cir.1991), or recklessness.

■ Though plaintiff alleges scienter only generally, he sufficiently alleges facts raising an inference that Smith spoke knowing that his statements were untrue. First, plaintiff alleges that defendants were motivated to assist Appelberg in this transaction by their hope of furthering their business relationship with him. More importantly, plaintiff alleges that, at the time of Smith's statements, the E–Lite stock appeared infrequently on the "Pink Sheets," which Smith consulted, indicating that the stocks were "highly speculative, poorly researched, difficult to sell, involve a high degree of risk, frequently represent companies with poor financial statements and few assets, are not readily or frequently traded and are completely unsuitable for collateral where the prompt and adequate recovery of sums due is important or critical." Amended Complaint at ¶ 27(h). One can infer that Smith, as an investment broker, was aware of the speculative nature of stocks appearing infrequently on the Pink Sheets and of the dubious value of the E–Lite stock in particular. Plaintiff should, therefore, be given an opportunity to prove his claim that Smith knowingly deceived him.

#### (ii) *Smith and Kilbride's Fax*

■ Defendants claim that Smith and Kilbride's fax is inactionable because it

contained only accurate information, *i.e.,* the "bid" and "ask" prices from the most recent Pink Sheet listings and the average of the two. Plaintiff responds that the calculation of the average could only have been intended to deceive plaintiff into believing that it represented the value of the stock. Nothing in the fax, however, stated or implied that the average was a measure of value; nor by any amplification was it so indicated. Further, the letter explicitly invited questions about its content. Plaintiff cannot claim a representation of value beyond the bid, which is the only amount at which a willingly buyer could be found willing to buy. A seller's "ask" is merely a wish or speculation as to a price which might be paid. It cannot be seen as establishing any thing more than a seller's hope which defendants did not explore or advance. However, the pleadings suggest this quote was not in a continuum, but isolated. If that be the case, the availability of a purchase would not necessarily have been reasonably likely. The letter was not inaccurate, but, in the failure to disclose the singularity of the quote, the implication, without a disclosure that the stock was quoted only infrequently, was that a market was reasonably readily available. Such would not have been the case if the stock was not regularly or reasonably continuously quoted. The single quote would, therefore, have been misleading, to plaintiff's detriment. Therefore, the motion to dismiss the claim to the extent it is based on the fax cannot be granted.

### B. *The "Connection With" the Purchase or Sale of Securities*

■ Defendants claim that the alleged fraud was not made "in connection with" the purchase or sale of securities, a prerequisite to a Rule 10(b)–5 action. *See Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 935 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). A pledge of stock, however, constitutes a "sale" within the purview of section 10(b). *Mallis v. Federal Deposit Ins. Co.,* 568 F.2d 824, 828–30 (2d Cir.1977), *cert. denied,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). There is no meaning-

ful distinction between *Mallis* and the case at bar. " 'In effect, the pledgee assumes a very real investment risk that the pledged securities will have continuing value, a risk that is identical in nature to the risk taken by investors, which serves as the indisputable basis for statutory regulation of securities transactions.' " *Id.* at 829, quoting *United States v. Gentile,* 530 F.2d 461, 466–67 (2d Cir.), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976).

■ Defendants also claim that their role in the transaction was so minimal that their actions could not have been "in connection with" the purchase or sale of securities. One need not actually engage in the securities transaction, however, to be liable under Section 10(b). *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 860 (2d Cir. 1968), *cert. denied sub. nom, Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). "Liability may befall one ... which actively induces a transaction to which it is not a party." *Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild, S.A.,* 630 F.Supp. 972, 978 n. 9 (S.D.N.Y.1986). "When one party undertakes to communicate information to another who it knows will use that information in connection with a securities purchase, the former assumes a duty 'to communicate any additional or qualifying information, then known, the absence of which would render misleading that which was communicated.' " *Id.* at 977, quoting *Rose v. Arkansas Valley Environmental & Util. Auth.,* 562 F.Supp. 1180, 1206–07 (W.D.Mo.1983). Plaintiff has, therefore, sufficiently alleged defendants' connection with the transaction.

### C. *Due Diligence*

■ Defendants argue that plaintiff cannot establish reliance because he did not exercise "due diligence" in inquiring about E–Lite stock. "A showing of reliance may be defeated ... where defendant establishes that plaintiff should have *discovered* the true facts.... [H]owever, the degree of diligence to which plaintiffs are held has been diminished to minimal diligence. More specifically, a plaintiff bears only the

burden of negating its own 'recklessness,' once the issue of diligence is raised by defendant." *Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015–16 (2d Cir.1989).[1]

Plaintiff here was certainly not cautious. Were negligence the relevant standard, his failure to research the value of the stock more thoroughly in advance of the closing, or to make additional inquiries of defendants in response to their explicit invitation to do so, would likely render his reliance unjustifiable as a matter of law. Under a recklessness standard, however, plaintiff could not be expected to fully·educate himself on the existence and meaning of the information in the Pink Sheets; he might legitimately have relied on information such as provided by defendants. The falsity of Smith's statements cannot absolutely be said to have been "palpable," *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1517 (10th Cir.1983), nor did plaintiff intentionally close his eyes to a risk "so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 78 (2nd Cir. 1980), quoting *Dupuy v. Dupuy*, 551 F.2d 1005, 1020 (5th Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977). There is no indication that plaintiff was sophisticated in matters involving securities. His actions cannot, on a motion to dismiss, be held reckless as a matter of law.

### D. *Statute of Limitations*

■ Defendants argue that plaintiff's action is barred by the one-year statute of limitations on the basis that the statute of limitations began to run on May 20, 1990, the date of the closing, because plaintiff had sufficient facts available to him on that day to realize that he had been defrauded.

A Section 10(b) must be brought "within one year after the discovery of the facts constituting the violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, —, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). " 'Where the circumstances are such to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth and shuts his eyes to the facts which call for an investigation, knowledge of the fraud will be imputed to him.' " *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983), quoting *Higgins v. Crouse*, 147 N.Y. 411, 416, 42 N.E. 6 (1895).

*Armstrong* requires not only that facts demonstrating the fraud be available to plaintiff, but also that plaintiff have some indication that he has been defrauded and, therefore, be obliged to inquire further. Here, defendants have identified no circumstances that should have suggested to plaintiff that he had been defrauded. To impose on plaintiff a duty to inquire in the absence of any indication that he had been defrauded would circumvent the recklessness standard under the due diligence analysis, discussed above. Because plaintiff has not been shown to have had reason to suspect fraud until he tried to liquidate the stock, defendants' statute of limitation argument necessarily fails.[2]

### III. *Conclusion*

For the foregoing reasons, defendants' motion to dismiss (document # 49) is granted in part and denied in part.

SO ORDERED.

---

1. Defendants, by citing only part of this case, give the misleading impression that mere negligence, rather than recklessness, is the applicable standard.

2. In a footnote in their brief, defendants renew their earlier argument that plaintiff's civil conspiracy count should be dismissed. Strictly speaking, there is no such thing as a civil action for conspiracy, but only an action for damages caused by acts committed pursuant to a formed conspiracy. *Sperry Rand Corp. v. Rothlein*, 241 F.Supp. 549, 559 (D.Conn.1965). As the plaintiff has alleged that damages were caused by acts committed pursuant to a conspiracy, the claim is proper and will be treated jointly with the plaintiff's remaining counts. *Id.*